UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SHEILA BELL,

                Plaintiff,

                                            Case No. 11-10905

      v.                                 Honorable Julian Abele Cook, Jr.

GENERAL MOTORS,

                Defendant.


ORDER

      In this case, the *pro se* Plaintiff, Sheila Bell, has accused the Defendant, General Motors ("GM"), of (1) discrimination on the basis of her gender and race, and (2) terminating her employment tenure as an act of retaliation after it had been the subject of an official complaint, in violation of Title VII of the Civil Rights Act of 1964. Currently before the Court is a motion by GM for the entry of a summary judgment. Fed. R. Civ. P. 56. (ECF 18).

I.

      In her complaint, Bell alleges that she worked at one of GM's plants in a salaried supervisory position for more than nine years prior to her involuntary discharge in July 2009. In connection with her termination, Bell (1) signed a "GM Severance Program Release Agreement" ("Agreement"), and (2) received approximately $24,650 in exchange for her release of "any claim, grievance, charge or lawsuit" against GM, including claims involving Title VII of the Civil Rights Act of 1964. According to the terms of the Agreement, Bell had (1) forty-five days in which to sign the

1

Agreement and (2) a period of seven days thereafter to revoke her commitment. She submits to have unsuccessfully attempted to contact her attorney on two separate occasions to discuss the Agreement, presumably to discuss the merit, if any, of signing the Agreement. Bell claims to have signed the release "not knowing what else to do" because, in her opinion, she felt "stressed, abandoned, and under duress." Although Bell and GM have differing views about the totality of the circumstances when she signed the Agreement, it is clear that (1) the words "under duress" appear next to her signature. Significantly, the Agreement included a clause which stated that "[t]his acceptance is not under duress . . . I am not being coerced into signing the Release," (2) the document was executed by the parties within the requisite forty-five period, and (3) she did not exercise her right of revocation within the agreed-upon seven day period thereafter.

On March 16, 2010, Bell filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), in which she asserted unlawful discriminatory conduct by GM. However, the EEOC discontinued its investigation and closed the case on December 16, 2010 after issuing an acknowledgment of settlement letter. Notwithstanding this action by the EEOC, and within ninety days thereafter, Bell filed this lawsuit as a *pro se* litigant, maintaining that (1) the staff reduction, which was the announced basis for the termination of her employment was only a pretext for the administrative action by GM, and (2) the actual reason for the loss of her job were based on race, gender, and retaliation.

II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v.*

2

*Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information,

3

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III

GM disputes Bell's version of the facts, and submits that her claims are barred by the terms within the Agreement which were acceptable to both parties when it was executed. GM correctly notes that the right to sue a former employer, including claims under Title VII, can be waived by the parties in a validly executed contract. *Adams v. Philip Morris Inc.*, 67 F.3d 580, 583 (6th Cir. 1995). The validity of such a waiver is determined by applying "ordinary contract principles." *Id.* A waiver is valid if it is "knowingly and voluntarily executed," as determined by the following five factors: (1) plaintiff's experience, background, and education, (2) the amount of time the Plaintiff had to sign the waiver and whether the Plaintiff had the opportunity to consult with a lawyer, (3) the clarity of the waiver, (4) consideration for the waiver, and (5) the totality of the circumstances. *Id.* An exploration into these five factors would seem to be appropriate at this time.

First, the Agreement that Bell signed is valid because it was "knowingly and voluntarily executed." Bell meets each *Adams* criterion. Bell's education and experience suggest she had a full understanding or, at the very least,  was capable of understanding the contract that was signed by her. There is evidence in the record that she had attended college and medical school, and she was a GM manager for nine years.

The parties have agreed that Bell had forty-five days to sign the Agreement which - in the

4

opinion of this Court - is more than a sufficient amount of time to reflect upon the wisdom, if any, of executing this document. Two years ago, the Sixth Circuit opined in *Gascho v. Scheurer Hosp.*, 400 F. Appx. 978, 982 (6th Cir. 2010)  that twenty one days, and as few as five days, *Adams*, 67 F.3d at 583, were sufficient lengths to knowingly and voluntarily sign such a document as a waiver. Bell's inability or failure to contact her lawyer cannot serve as an invalidating factor in the absence of other mitigating information that would support her position on this issue. Further bolstering GM's position are seven days that she had to revoke the Agreement. Notably, the  Sixth Circuit - nearly a decade ago - held that the three days  a party was given to revoke the enforcement of a contract was sufficient.  *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 668 (6th Cir. 2003).

The language within the Agreement which addressed Bell's waiver right is clear and unambiguous:[1] "In consideration for the increased Plan benefits available to me because of my execution of this Release, I . . . hereby release and forever discharge GM . . . from any claims, grievances, lawsuits, demands, and causes of action . . . which I may have relating to my employment or my separation from GM."  This waiver, which was signed by Bell, specifically released GM from any claims by her under Title VII of the Civil Rights Act of 1964.

The contract contained a presumptively valuable consideration that was exchanged between the parties; to wit, approximately $24,650 from GM to Bell who thereafter released all of her rights under the law to pursue legally enforceable claims against GM.

---

1 Bell suggests in her reply brief that she did not understand the significance of the words "in consideration" which appear in the Agreement.  While the Court is sympathetic to her misunderstanding, it is a basic principle of the law that a person cannot avoid the effects of a contract simply because she failed  to fully understand its words or meaning. *Mahoney v. USA Hockey, Inc.*, 5 F. Appx. 450, 457 (6th Cir. 2001).

5

Bell offers two arguments, both of which were proffered to support her contention that the Agreement is not enforceable, especially when viewed from a "totality of the circumstances" perspective. Initially, Bell maintains that the Agreement was signed under duress which, in her opinion, counters GM's argument in favor of the enforcement of the parties' contract. However, Bell has failed to satisfy the exacting standard of duress. In essence, duress involves an "unlawful or wrongful act or threat that overcomes the free will of the victim." *Gascho*, 400 F. Appx. at 982; *see also Harvard Drug Group, LLC v. Linehan*, 684 F. Supp. 2d 921, 926 (E.D. Mich. 2010) (internal quotation marks omitted) ("Duress requires compulsion or coercion by which one is illegally forced to act by fear of serious injury to person, reputation or fortune."); *Hackley v. Headley*, 8 N.W. 511, 512-13 (Mich. 1881) ("Duress exists when one by the unlawful act of another is induced to make a contract or perform some act under circumstances which deprive [her] of the exercise of free will.").

Here, there is no evidence that Bell was ever threatened in such a way that overcame her free will. Before signing the Agreement, she had forty-five days in which to deliberate and consult with an attorney. The Agreement also enabled Bell to reconsider and revoke her agreement. Bell does not offer any evidence that she signed this document against her free will. Despite the persistent pressures that she claims to have received from GM prior to the execution of the Agreement, Bell has failed to demonstrate that the act of signing this document was executed against her will. "Not knowing what else to do" does not meet the high threshold of acting against free will. The act of simply writing "under duress" next to her signature does not satisfy the high standard of duress that must be adopted in this case. *See Parker v. Key Plastics, Inc.*, 68 F. Supp. 2d 818, 826 (E.D. Mich. 1999) (writing "under duress" on a settlement agreement "fail[s] to establish that the execution of

6

[the] agreement was anything other than knowing and voluntary.")

Bell also submits that she is in the process of returning the $24,650 to GM - an act that would, in her opinion, repudiate her participation in the Agreement. A person, who signs a contract under duress, can repudiate the contract by acting "prompt[ly] upon removal of the duress." *Cumberland & Ohio Co. of Tex., Inc. v. First Am. Nat'l Bank*, 936 F.2d 846, 850 (6th Cir. 1991); *see also Fortuna v. UPS*, 1999 U.S. Dist. LEXIS 19433 (W.D. Mich. 1999) ("a party may ratify a release by accepting payment and failing to seek a remedy or otherwise repudiate the release within a reasonable period of time."). Here, there is no evidence that Bell acted promptly to repudiate her participation in the execution of the Agreement. In fact, she kept the $24,650 for two and a half years. Thus, the Agreement is binding.

IV.

For the reasons that have been stated above, the Agreement remains a valid contract which bars Bell's lawsuit. Therefore, a summary judgment in favor of GM is granted. (ECF 18). Additionally, Bell has failed to respond to the Court's order to show cause on April 11, 2012 as to why Defendant Lawrence Davis should not be dismissed. Therefore, Defendant Lawrence Davis is dismissed.

IT IS SO ORDERED.

Date: July 6, 2012                              s/Julian Abele Cook, Jr.

JULIAN ABELE COOK, JR.

United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 6, 2012.

s/ Kay Doaks

Case Manager